FILED

2017 Feb-01  PM 01:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| THE WAY INTERNATIONAL, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.:  7:15-CV-370-RDP |
| | } | |
| THE CHURCH OF THE WAY | } | |
| INTERNATIONAL, et al., | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

In the last few decades, parties, courts, and commentators have emphasized the value of private alternative dispute resolution as a substitute for litigation in public courts.  The Apostle Paul may have been ahead of his time in this area, although for different "policy" reasons.  In his first letter to the Church at Corinth, he warned the Church not to take their lawsuits before secular courts. I Cor. 6:1 (New Living Translation) ("When one of you has a dispute with another believer, how dare you file a lawsuit and ask a secular court[1] to decide the matter instead of taking it to the believers!"). Despite this admonition, the parties in this case -- two ministry organizations -- are embroiled in a dispute over the use of "marks" that has found its way on to this court's docket. The court stands ready, willing, and (hopefully) able to rule on it.

This matter is before the court on Plaintiff The Way International's Motion for Summary Judgment (Doc. # 32).  The Motion has been fully briefed.  (Docs. # 37-41, 45).

---

[1] Other translations refer to a secular court as "the ungodly" (New International Version), "the unjust" (King James Version) or "the unrighteous" (English Standard Version). This court does not self-adopt any of these titles.

## I.      Summary of Relevant Facts

If facts are in dispute, they are stated in the manner most favorable to the non-movant, and all reasonable doubts about the facts have been resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).   These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial.  *See Cox. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994). Having said that, a review of the record shows that the facts relevant to this motion are not genuinely in dispute.  The parties certainly have a dispute.  But it is not factual in nature.

Plaintiff, The Way International is a non-denominational Biblical research, teaching, and fellowship ministry with an international membership. (Doc. # 32-5 ¶ 3, p. 1). Originally incorporated in 1947, The Way International changed its corporate name to The Way, Inc. in 1955, and subsequently to The Way International in 1974.  (Doc. # 32-5 ¶ 5, p. 2).  Plaintiff currently operates eleven separate fellowships with about 200 followers in the State of Alabama, including two separate fellowships in Birmingham.  (Doc. # 32-5 ¶ 5, p. 2).

The Way International has used the mark THE WAY for over sixty years and the mark THE WAY INTERNATIONAL for over forty years in connection with the provision of its religious educational services, publications, and related goods and services in the United States and throughout the world.  (Doc. # 32-5 ¶ 5, p. 2).  In Alabama, where Defendants are located, The Way International has used its marks for over forty years.  (Doc. # 32-5 ¶ 5, p. 2).

The Way International has expended time, effort, and money promoting its organization and its goods and services under the marks THE WAY and THE WAY INTERNATIONAL. (Doc. # 32-5 ¶ 6, 7, p. 2).  As a result of Plaintiff's promotional efforts and extensive use of its

marks, Plaintiff has established national and worldwide recognition of the marks, and people involved in religious studies and fellowship associate the marks with Plaintiff.  (Doc. # 32-5 ¶ 7, p. 2).

In the late 1990s, The Way International began promoting its goods and services online by launching its official website located at TheWay.org.  (Doc. # 32-5 ¶ 10, pp. 3-4).  In addition, Plaintiff has registered the following domain names: TheWayInternational.net, TheWayInternational.org, TheWayInternational.info, TheWay.com, TheWay.net, TheWay.info, TheWay.tv, TheWayIntl.net, TheWayIntl.org, TheWayIntl.info; TheWayMinistry.com, TheWayMinistry.net, TheWayMinistry.info, and WayInternational.org, which Plaintiff uses to redirect Internet browsers to its official website.  (Doc. # 32-5 ¶ 11, p. 4; Doc. # 32-6).

The Way International owns 16 federal trademark registrations comprised of or containing the marks THE WAY and THE WAY INTERNATIONAL (Doc. # 32-5 ¶ 8, p. 2). The registrations for THE WAY and the WAY INTERNATIONAL are set forth in the chart below.

| Exhibit | Mark | Reg. No./Date | Class, Goods/Services |
|---------|------|---------------|------------------------|
| E | THE WAY | **Reg** 1155904<br><br>**Reg** 26-MAY-1981 | **INT. CL. 41** educational services-namely, providing religious teaching services by means of motion pictures and slide presentations and producing and presenting musical, dramaticomusical, and dramatic productions and presenting works of art, publishing of periodicals and booklets of a religious nature |
| F | THE WAY | **Reg** 1236084<br><br>**Reg** 03-MAY-1983 | **INT. CL. 16** religious paperback and hardback books, study manuals, and stationery-namely, notecards |

| Exhibit | Mark | Reg. No./Date | Class, Goods/Services |
|---------|------|---------------|------------------------|
| G | THE WAY INTERNATIONAL | Reg 2885949<br><br>Reg 21-SEP-2004 | INT. CL. 16 religious paperback and hardback books; religious brochures and study manuals; stationery, namely, note cards, invoices, and gift certificates |
| H | THE WAY INTERNATIONAL | Reg 2885950<br><br>Reg 21-SEP-2004 | INT. CL. 9 audiotapes, videotapes, records, cds and cassettes in the field of religion |
| I | THE WAY INTERNATIONAL | Reg 2901293<br><br>Reg 09-NOV-2004 | INT. CL. 35 retail bookstore services in the field of religion |
| J | THE WAY INTERNATIONAL | Reg 2901294<br><br>Reg 09-NOV-2004 | INT. CL. 41 educational services, namely, providing religious teaching services by means of motion pictures and slide presentations; entertainment services, namely, producing and presenting musical, dramaticomusical, and dramatic productions and presenting works of art in the field of religion; publishing of periodicals and booklets of a religious nature |
| K | THE WAY | Reg 4362413<br><br>Reg 02-JUL-2013 | INT. CL. 9 digital materials, namely, cds, and dvds in the field of religion; downloadable audio files, multimedia files, written documents, audio material, video material featuring information in the field of religion |

(Doc. # 32-7 – 32-13). The Way International actively polices possible infringements of its marks, and takes action to protect its marks as appropriate under the circumstances.  (Doc. # 32-5 ¶ 15, p. 4).

Defendants began operating a nondenominational Biblical ministry in October or November 2014.  (Doc. # 23 ¶ 23).  Defendants Pastor Mason and Ms. Mason selected the name "The Church Of The Way International" for their ministry.  (Doc. # 23 ¶ 24).   Defendants registered with the Alabama Secretary of State under the name "The Church Of The Way International." (Doc. # 32-14).

Defendant Pastor Mason registered and owns the internet domain name thechurchofthewayinternational.org (the "Domain Name").  (Doc. # 23 ¶ 25; Doc. # 32-15).  Defendants are using the Domain Name in connection with the website at the following URL: http://thechurchofthewayinternational.org.  (Doc. # 23 ¶ 42; Doc. # 32-16). Defendants provide prayer, worship, and outreach services, offer religious teaching materials including a series of audio CDs, and solicit charitable contributions.  (Doc. # 23 ¶ 23; Doc. # 32-16).

Prior to receiving the letters from the Plaintiff's attorney requesting that Defendants stop using Plaintiff's marks, Defendants had never heard of Plaintiff (Doc. # 39 ¶ 7) and they deny having any intent to profit from the use of Plaintiff's marks. (Doc. # 39 ¶ 12).

Defendants have used (and continue to use) "The Church Of The Way International" and http://thechurchofthewayinternational.org to promote and advertise their services and products, including religious teaching services, and also to solicit monetary contributions.  (Doc. # 23 ¶ 27; Doc. # 32-16).  Defendants have not obtained any authorization from The Way International to use its marks.  (Doc. # 23 ¶ 22; Doc. # 32-5 ¶ 18, p. 5). After Defendants received Plaintiff's letter demanding that the Defendants cease use of "The Church Of The Way International" and http://thechurchofthewayinternational.org, Defendants continued to use the marks and Domain Name, and their use of them has continued.  (Doc. # 23 ¶ 28; Doc. # 32-16).

On April 29, 2016, the same day that Plaintiff filed its Motion for Summary Judgment, Defendants filed a Trademark/Service Mark Application with the United States Patent and Trademark Office, Serial Number: 87019245, seeking to register the mark "The Church Of The Way International." (Doc. # 45-4).

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial.  *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be grated.  *See id.*, at 249.

6

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on [her] allegations made in the complaint; instead, as the party bearing the burden of proof of trial, [s]he must come forward with at least some evidence to support each element essential to [her] case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by a plaintiff are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc*., 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.   Analysis

Plaintiff's Complaint contains five counts against Defendants: (1) Federal Trademark Infringement under 15 U.S.C. § 1114(1); Federal Unfair Competition under 15 U.S.C. § 1125(a)(1); (3) Federal Cybersquatting under 15 U.S.C. § 1125(d)(1); (4) Alabama Common Law Trademark Infringement and Unfair Competition; and (5) Unlawful & Deceptive Trade Practices Under Ala. Code § 8-19-5. (Doc. # 1). The court addresses each of these claims, in turn.  After careful review, and for the reasons stated below, the court concludes that Plaintiff's Motion for Summary Judgment is due to be granted in part and denied in part.

### A.   Count I - Federal Trademark Infringement under 15 U.S.C. § 1114(1)

A person is liable for infringement under the Lanham Act if he uses a mark in commerce that is confusingly similar to a registered mark. *See* 15 U.S.C. § 1114(1)(a); *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1181 (11th Cir. 2015).

"A plaintiff bringing an infringement action must prove 'first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion.'" *Sovereign Military Hospitaller*, 809 F.3d at 1181 (quoting *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)).  The Eleventh Circuit has set forth a seven factor balancing test that courts should apply in evaluating whether there is a likelihood of confusion. The seven factors are as follows:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the

proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Sovereign Military Hospitaller*, 809 F.3d at 1181 (quoting *Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010)).  The district court "does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration." *Id.* (quoting *Swatch Watch, S.A. v. Taxor, Inc*., 785 F.2d 956, 958 (11th Cir. 1986)). The court addresses the relevant factors below after a discussion of the Defendants' challenge to the marks at issue.

### 1.    Defendants' Challenge to the Validity of Plaintiff's Marks

In challenging the validity of Plaintiff's registered marks, Defendants offer little more than conclusory allegations of invalidity. Specifically, Defendants "deny that the Plaintiff has a valid protected mark. The Defendants contend the term 'The Way' is a generic mark and, if capable of being a valid protected mark is given the lowest level of protection."  (Doc. # 38 at 5). The argument fails for at least two reasons.  First, Defendants offer no evidence to support this assertion. Absent any factual support, Defendants arguments are insufficient to preclude summary judgment on the issue of validity of the marks. *See Leigh v. Warner Bros*., 212 F.3d 1210, 1217 (11th Cir. 2000).

Second, and moreover, this argument ignores the fact that registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a presumption that the mark is protectable or distinct. 15 U.S.C. § 1057(b); *see also Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n. 3 (11th Cir. 2007); *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1346 (S.D. Fla. 2016) ("Registration of a trademark establishes a rebuttable presumption that it is distinctive."). After five years of continuous use, the owner of a registered trademark may file an affidavit and have the mark declared "incontestable." *Wilhelm Pudenz, GmbH v. Littlefuse, Inc*., 177 F.3d 1204, 1208 (11th Cir. 1999) (citing 15 U.S.C. § 1065).

"Incontestability offers two key benefits for plaintiffs complaining about an infringement. With respect to the first element of infringement—validity—incontestability provides 'conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.'" Sovereign Military Hospitaller, 809 F.3d at 1183 (quoting 15 U.S.C. § 1115(b) (emphasis in original). "Registration alone, by contrast, provides only "prima facie evidence of ... validity." Id. (quoting § 1115(a) (emphasis in original). See also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 196 (1985) (the Lanham Act expressly provides that before a mark becomes incontestable an opposing party may prove any legal or equitable defense which might have been asserted if the mark had not been registered, however, once a mark is incontestable the registration is conclusive evidence of the registrant's exclusive right to use the mark, subject only to the defenses enumerated in the statute). Six of Plaintiff's federally registered Marks are incontestable.  (Docs. # 32-7 – 32-12).

Finally, 15 U.S.C. § 1115(b) allows for certain enumerated defenses, but the court finds those inapplicable here.  Further, any such defenses only "rebut the conclusive presumption of validity that comes with incontestability." Sovereign Military Hospitaller, 809 F.3d at 1191. A defendant seeking to rely upon any of these statutory defenses "must still identify some additional reason why the plaintiff's marks are invalid." Id. This, Defendants have not done. Accordingly, the court concludes that Defendants' incontestable marks are valid.

### 2.    Application of the Seven Factors

The Eleventh Circuit has discussed how to weigh the seven "likelihood of confusion" factors, noting that the process "entails more than the mechanistic summation of the number of factors on each side." Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 649 (11th Cir.

10

2007). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. at 650 (internal citations omitted).

### (i) Strength of the Mark Alleged to Have Been Infringed

In the Eleventh Circuit, even though members of that court have questioned whether the principle is correct, "incontestable marks are presumptively strong." *Sovereign Military Hospitaller*, 809 F.3d at 1184 (citing *Dieter v. B & H Industries of Southwest Florida, Inc*., 880 F.2d 322, 329 (11th Cir.1989) (prior panel decision).  Here, Defendants have offered no evidence -- and scarce argument -- to overcome this presumption.  Therefore, this court is bound to hold that Plaintiffs' six incontestable marks are presumptively strong.

### (ii) Similarity of the Infringed and Infringing Marks

Plaintiff has successfully registered the marks "THE WAY" and "THE WAY INTERNATIONAL" in connection with its ministry and religious goods and services. Six of those registrations have become incontestable. In October 2014, Defendants began operating their ministry under the name "The Church Of The Way International" for their ministry.  (Doc. # 23 ¶ 24). The name Defendants selected incorporates both of Plaintiff's incontestable marks ("THE WAY" and "THE WAY INTERNATIONAL") in connection with a religious institution or ministry.  The court does not hesitate to find that the marks used by the parties are similar.

In addressing this factor, Defendants again argue that Plaintiff's marks were not appropriate for trademark registration.  (*See, e.g.* Doc. # 38 at 6-7).  The fact remains, however, that the USPTO accepted the marks on the Federal Register.  And, since then six of those marks have now become incontestable.  Any quarrel Defendants have with whether the marks *should*

have been registered is insufficient to create an issue of fact as to whether they were, in fact registered and are now incontestable. Moreover, Plaintiff has submitted a decision by the Trademark Trial and Appeal Board holding that the mark "THE WAY" is neither generic nor merely descriptive of Christianity or followers of Christ. (Doc. # 45-1).[2]

### (iii) Similarity between the Goods and Services Offered under the Two Marks

Plaintiff's marks are registered for the following classes of goods and services ─ Class 9: audiotapes, videotapes, records, cds and cassettes, including digital materials, namely, cds, and dvds in the field of religion; downloadable audio files, multimedia files, written documents, audio material, video material in the field of religion; Class 16: religious paperback and hardback books, study manuals, and stationery-namely, notecards, invoices, and gift certificates; Class 35: retail bookstore services in the field of religion; Class 41: educational services, namely, providing religious teaching services by means of motion pictures and slide presentations; entertainment services, namely, producing and presenting musical, dramaticomusical, and dramatic productions and presenting works of art in the field of religion; publishing of periodicals and booklets of a religious nature.  (Doc. # 32-1 at 5-6).

Defendants distinguish their goods and services by noting that they place a primary emphasis on a traditional church type setting with a local congregation and a fixed location. They also argue that there are vast differences in the religious teaching of both organizations. However, this assertion merely highlights the fact that both parties similarly offer religious teaching, services and goods, although they may be representative of different "denominations." Therefore, the court finds that the parties' use of the competing marks took place within similar classes of goods and services.

---

[2] To be crystal clear, although the court in no way views the TTAB's decisions as precedential, in this instance its decision is persuasive.

### (iv) Similarity of the Actual Sales Methods Used

Both parties advertise their religious goods and services via the Internet on their respective websites and social media platforms.  Defendants admit as much. (Doc. # 38 at 7). Defendants use Plaintiff's marks in their Twitter handle @TheWayIntl."  Defendants' argument that the types of education materials sold by Defendants is different from that offered by Plaintiff is belied by the similarity of their goods and services as discussed above.  But it is also irrelevant here.  This factor addresses the sales *methods*, which are without doubt similar.

### (v) Similarity of Advertising Methods

This factor requires little analysis.  Defendants concede that they, like Plaintiff, use social media to spread their name and build attendance.  (Doc. # 38 at 8).

### (vi) Intent of the Alleged Infringer

"The sixth factor asks whether the defendant adopted its mark 'with the intent of deriving benefit from the reputation of the plaintiff.'" *Sovereign Military Hospitaller*, 809 F.3d at 1188 (quoting *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)). "'Bad faith in the adoption and use of a trademark normally involves ... efforts by a party to "pass off" its product as that of another.'" *Id.* (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)).

Where there is evidence of an intent to derive a benefit from the use of another party's marks, that fact may justify an inference that there is confusing similarity.  But the existence of such an intent is not necessary to support a finding that there is a "likelihood of confusion." *Sovereign Military Hospitaller*, 809 F.3d at 1188.  Here, prior to receiving letters from Plaintiff's attorney requesting that Defendants stop using Plaintiff's marks, Defendants state that they had never heard of Plaintiff. (Doc. # 39 ¶ 7). Defendants further deny having any intent to profit from

13

the use of Plaintiff's Marks. (Doc. # 39 ¶ 12). However, there is also evidence that Defendants refused to cease using Plaintiff's marks, including the incontestable ones, after being put on notice of the existence of the federal trademark registrations. And while Defendants argue that the registrations were somehow invalid, that argument ignores the fact of the registrations and their incontestability.  As discussed above, because of their incontestability, Plaintiff's marks are conclusively valid.[3] Moreover, on the same day that Plaintiff filed its Motion for Summary Judgment, Defendants filed a Trademark/Service Mark Application with the United States Patent and Trademark Office, Serial Number: 87019245, seeking to register the mark "The Church Of The Way International." (Doc. # 45-4).[4] Defendants' proposed mark incorporates Plaintiff's incontestable marks.  On balance, and on this Rule 56 record, the evidence on this factor does not weigh in favor of either party.

> **(vii) The Existence and Extent of Actual Confusion in the Consuming Public**

Although "[t]he 'best evidence' that the parties' marks are likely to be confused is evidence that the marks actually have been confused," *Sovereign Military Hospitaller*, 809 F.3d at 1189 (quoting *Amstar Corp.*, 615 F.2d at 263), Plaintiff has not provided any evidence of actual confusion of the marks. Nevertheless, "[e]vidence of actual confusion is 'not necessary' for the plaintiff to prevail on a claim of infringement … ." *Id.*

---

[3] Defendants' contention in this regard is curious.  It may be best characterized in this manner: it is acceptable to break a law with which one disagrees.

[4] On April 29, 2016, Defendants sought to register their mark "The Church Of The Way International." (Doc. # 45-4).  Ironically, on September 11, 2016, the USPTO issued a "Section 2(d) Refusal – Likelihood of Confusion" on Defendants' application.  That refusal states, "Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 1155904, 2151377, 2458452, 2885949, 2901293, 2885950, 2901294, and 4362413." *See* http://tsdr.uspto.gov/documentviewer?caseId=sn87019245&docId=OOA20160911211726#docIndex=0&page=1 (last visited January 19, 2017).  Marks 1155904, 2885949, 2885950, 2901294, and 4362413 are owned by Plaintiff and are at issue in this case.

### 3.    The Court's Conclusions Based upon its Application of the Seven Factors

Having considered and applied the Eleventh Circuit's seven factor balancing test to the Rule 56 record, the court agrees with the USPTO that Defendants' use of their name "The Church Of The Way International" for their ministry and related goods and services creates a likelihood of confusion with Plaintiff's incontestable marks "THE WAY" and "THE WAY INTERNATIONAL" in connection with its ministry and related goods and services.

Because Plaintiff has presented undisputed evidence that its marks are valid and that Defendants' use of a similar mark is likely to cause confusion, Plaintiff's Motion for Summary Judgment is due to be granted as to liability on Count I.

### B.    Count II - Federal Unfair Competition under 15 U.S.C. § 1125(a)(1)

To prove a federal unfair competition claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must show (1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers would likely confuse the two. *See Suntree Tech., Inc. v. Ecosense Int'l, Inc*., 693 F.3d 1338, 1346 (11th Cir. 2012) (internal citations omitted). The legal standard for unfair competition under both the Lanham Act and the common law has been held to be essentially the same as the standard for trademark infringement. *See Florida Int'l Univ. Bd. of Trustees v. Florida Nat. Univ., Inc*., 91 F. Supp. 3d 1265, 1284-85 (S.D. Fla. 2015); *Turner Greenberg Assocs., Inc. v. C & C Imp., Inc*., 320 F.Supp.2d 1317, 1330 (S.D. Fla. 2004); *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.2d 1472, 1475 n. 3 (11th Cir. 1991)). Courts therefore apply the same seven-factor "likelihood of confusion" test to claims brought under 15 U.S.C. § 1125(a) as well as infringement claims. *See Florida Int'l Univ. Bd. of Trustees*, 91 F. Supp. 3d at 1285; *Custom Manufacturing*, 508 F.3d at 647–48. Thus, because Plaintiff's unfair competition claim mirrors its trademark infringement

15

claim, its motion for summary judgment as to its Unfair Competition claim in Count II is likewise due to be granted.

> **C.      Count III - Federal Cybersquatting under 15 U.S.C. § 1125(d)(1).**

To establish a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a plaintiff must establish that "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to ... the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *Vivid Entm't, LLC v. Baserva*, , 2015 WL 5021417, *4 (M.D. Fla. Aug. 25, 2015) (quoting *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A*., 734 F.Supp.2d 1262, 1275 (M.D. Fla. 2010) (internal quotation omitted)).

"A finding of 'bad faith' is an essential prerequisite to finding an ACPA violation." *See Interstellar Starship Servs., Ltd. v. Epix, Inc*., 304 F.3d 936, 947 (9th Cir. 2002). "Without a finding of bad faith, [plaintiff's] cybersquatting claim necessarily fails." *Id.* Courts have identified two "quintessential example[s]" of bad faith: where a defendant "purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price," and where a defendant "intend[s] to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1058 (10th Cir. 2008); *see also Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir.2003) ("Registering a famous trademark as a domain name and then offering it for sale to the trademark owner is exactly the wrong Congress intended to remedy when it passed the ACPA."). Eleventh Circuit precedent

16

also requires a bad faith intent to profit. That is, "[p]roving [mere] 'bad faith' is not enough. A defendant is liable only where a plaintiff can establish that the defendant had a 'bad faith *intent to profit*.'" *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (citing 15 U.S.C. § 1125(d)) (emphasis in original). The requirement of proof of a bad faith intent to profit limits the statute's scope and ensures that the ACPA targets only the specific evils that Congress sought to prevent. This element removes from the ambit of the statute conduct that might annoy or frustrate mark holders, but that Congress shielded from liability by requiring indicia of the sort of bad faith it had in mind. *See, e.g., S. Grouts & Mortars*, 575 F.3d at 1246–47.

Here, Plaintiff has provided no indisputable evidence (and, really, no substantial evidence for that matter) that Defendants possessed a bad faith intent to profit.  On the contrary, Defendants have presented substantial evidence tending to negate such an intent in the form of the Declaration of Pastor James H. Mason, III. (Doc. # 39). Thus, on this Rule 56 record, the court cannot conclude that Defendants acted with the "bad faith intent to profit" required to establish an ACPA violation.  Plaintiff's Motion is due to be denied as to Count III.

### D.    Count IV - State Law Infringement and Unfair Competition

Count IV asserts a claim of common law trademark infringement and unfair competition under Alabama law. Alabama courts have long recognized a cause of action for unfair competition through imitation of a competitor's trade name. *Alfa Corp. v. Alfa Mortgage Inc.*, 560 F. Supp. 2d 1166, 1175 (M.D. Ala. 2008) (citing *Fuqua v. Roberts*, 269 Ala. 59, 110 So.2d 886, 887 (1959)).  "Alabama law does not recognize a common-law tort of unfair competition." *Alfa Corp.*, 560 F. Supp. 2d at 1175.

17

"The test for the state-law infringement claim under Alabama common law is same as it is under the Lanham Act. *Id.* (citing *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F.Supp. 384, 389 (N.D. Ala. 1983)).   Therefore, because the court found Plaintiff is entitled to summary judgment on its Lanham Act claim, the court similarly concludes Plaintiff is entitled to summary judgment on its common law trademark infringement claim.  *See Alfa Corp.*, 560 F. Supp. 2d at 1175.

### E.    Count V - Deceptive Trade Practices under Alabama Code § 8–19–5

Plaintiff lacks standing to bring this claim. Under Alabama Code § 8–19–3(2), a "consumer" is defined as "any natural person who buys goods or services for personal, family or household use." "Liability under the chapter is imposed against '[a]ny person which commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer ...'" *EBSCO Indus., Inc. v. LMN Enterprises, Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (quoting Ala.Code § 8–19–10); see also *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F.Supp. 1393, 1399 (N.D. Ala. 1997). Because Plaintiff does not meet the definition of a "consumer," Plaintiff's Motion is due to be denied as to this claim.

### F.    Injunctive Relief

Plaintiff is entitled to injunctive relief due to Defendants' trademark infringement.  In the words of the Honorable W. Keith Watkins of the Middle District of Alabama:

> As discussed above, Plaintiff has established Defendant's trademark infringement. By virtue of Defendant's trademark infringement, Plaintiff has also established irreparable harm and no adequate remedy at law, as it is usually recognized in trademark infringement cases that there is no adequate remedy at law to redress infringement, and infringement by its nature causes irreparable harm. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *GMC v. Phat Cat Carts, Inc.*, 504 F.Supp.2d 1278 (M.D. Fla. 2006). Thus, the undersigned finds Plaintiff is entitled to the entry of a permanent injunction.

*Alfa Corp.*, 560 F. Supp. 2d at 1177.

18

### G.     Reasonable Costs and Attorneys' Fees

As prevailing party, Plaintiff is entitled to an award of costs.  The amount of those costs remain to be determined.  Further, the statute provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Plaintiff seeks fees in addition to costs.  The Eleventh Circuit has defined an exceptional case as one that can be characterized as malicious, fraudulent, deliberate, and willful. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001); *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994).

The court believes that the record is not sufficiently developed to make a determination as to whether this case is an "exceptional" case warranting an award of fees.  An evidentiary hearing will be necessary to evaluate this issue and will be set by separate order.

## IV.     Conclusion

For all of these reasons, Plaintiff's Motion for Summary Judgment is due to be granted in part and denied in part.  A separate order will be entered.

**DONE** and **ORDERED** this February 1, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

19